## EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") dated as of the 12th day of February, 2007, between CORE MANAGEMENT SERVICES, L. L. C. (the "Company"), a limited liability company organized and existing under the laws of the State of New York, with its principal office located at 111 Grant Avenue, Endicott, N.Y. 13760, and Ronald Todd (the "Employee"), residing at 8772 Eastbrook Circle, Chagrin Falls, Ohio 44023 supersedes all previous agreements between Company and Employee.

## AGREEMENTS

1. **EMPLOYMENT**

In consideration of the covenants and obligations set forth in this agreement, the Company hereby agrees to employ the Employee and the Employee hereby agrees to perform services as an employee of the Company, upon the following terms and conditions:

2. **TERM**

The term of this Agreement shall begin on of the 12th day of February, 2007 and shall continue until terminated as hereinafter provided.

3. **COMPENSATION, FRINGE BENEFITS, VACATIONS**

For all services rendered by the Employee, the Company shall compensate the Employee and shall provide fringe benefits and vacations as set forth in the Compensation, Fringe Benefits and Vacations Schedule (Exhibit "A") attached hereto.

4. **DUTIES AND RESPONSIBILITIES**

The Employee agrees to perform the duties as set forth in the Duties and Responsibilities attachment (Exhibit "B") attached hereto. The precise services of the Employee may be extended or curtailed by the Employer from time to time.

5.  EXTENT OF SERVICES

The Employee shall devote his best efforts and substantially his full time and attention to the duties and responsibilities as an employee of the Company.

6.  CONFIDENTIALITY

The Company and the Employee shall sign and execute a Confidentiality and Non-Competition Agreement as attached hereto (Exhibit "C").

7.  TERMINATION

Employee acknowledges and agrees that the Employee is an "at will" employee of the Company. As such, no term of employment is created hereby and Employee may be terminated at any time in the sole discretion of the Company, regardless of the existence of any cause for termination.

8.  GOVERNING LAW

The provisions of this agreement will be governed by the laws of the State of New York.

9.  NOTICES

Any notice required or desired to be given under this Agreement shall be deemed given if in writing and sent by certified mail to the residence of record in the case of the Employee, or to its principal office in the case of the Company.

10.  WAIVER OF BREACH

The waiver by the Company of a breach of any provision of this Agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee. No waiver shall be valid unless in writing and signed by an authorized officer of the Company.

11. ASSIGNMENT

The Employee acknowledges that the services to be rendered by him are unique and personal. Accordingly, the Employee may not assign any of his rights or delegate any of his duties or obligations under this Agreement. The rights and obligations of the Company under this Agreement shall inure to the benefit of and shall be binding upon their successors and assigns of the Company.

12. SEPARABILITY

If, for any reason, any provision of this agreement is held invalid, the other provisions of this agreement will remain in effect, insofar as they are consistent with law.

13. ENTIRE AGREEMENT

This Agreement contains the entire understanding of the parties. It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

IN WITNESS WHEREOF, the parities have executed this Agreement on the 12th day of February, 2007.

_____  Date 2/12/07
Company

_____  Date 2/12/07
Employee

3

EXHIBIT "A"
COMPENSATION, FRINGE BENEFITS AND VACATIONS SCHEDULE

SALARY

For all services rendered by the Employee under this Agreement, the Company shall pay an annual salary of Seventy Two Thousand Dollars ($72,000.00). The salary will be payable in twenty four (24) equal semi-monthly installments or in other such convenient installments as determined by the Company. Salary will be subject to withholding and other applicable taxes. If, in any year, the Employee is not employed for a full year, the annual salary will be prorated for the period the Employee is actually employed by the Company.

SALES COMMISSIONS

In addition to the salary provided above, the Company shall pay sales commissions to the Employee to be determined as follows:

The Employee will receive Eight Percent (8%) of the "Gross Profit" from any "New Direct Sale" which arises directly from the Employee's sales efforts for "Site-based Accounts" with gross profit levels less than or equal to Forty Four Percent (44%), and for "Corporate-supported Accounts" with gross profit levels less than or equal to Sixty Eight Percent (68%).

For any New Direct Sale which arises directly from the Employee's sales efforts for Site-based Accounts with greater than a Forty Four Percent (44%) gross profit level, and for Corporate-supported Accounts with greater than a Sixty Eight Percent (68%) gross profit level, the Employee will receive Eight Percent (8%) of the first Forty Four Percent (44%) of gross profit on the Site-based accounts and Eight Percent (8%) of the first Sixty Eight Percent (68%) gross profit on the Corporate-supported accounts. For all gross profits above the Forty Four Percent (44%) level for the Site-based Accounts and above the Sixty Eight Percent (68%) level for the corporate supported Accounts, the Employee will receive Thirty Percent (30%) of the Gross Profit.

The Company, at its sole discretion, may elect not to pay a commission on any Site-based Account with gross profit levels lower than 38% or Corporate Supported Account with Gross Profit levels lower than Sixty Three Percent (63%).

Before a New Direct Sale is deemed to be credited to the Employee, the Employee must have submitted a Commission Claim Form, as set forth in this Exhibit, and must have received the Company's written approval, to be given at the sole discretion of the Company.

Definitions:

A "New Direct Sale" includes any new business which is brought about directly by the Employee's sales efforts. A New Direct Sale does not include any subsequent sales to a former or existing customer at future dates nor does it include sales made at other customer sites unless agreed upon by Employee and Company in advance and in writing.

"Gross Profit" is defined as sales less direct expenses. Direct expenses include: direct consulting labor with all associated taxes and benefits, travel, computers, equipment, supplies, and applied support costs.

A "Site-based Account" is defined as an account which is primarily serviced by at lease one full time, on-site, assigned Company employee.

A "Corporate Supported Account" is defined as an account which is primarily serviced by an employee or employees that are not assigned to the site on a full-time basis.

Commissions shall only be paid to the Employee if he or she is employed by the Company, in good standing, as solely determined by the Company, at the time that the commissions are scheduled to be paid.

## ADDITIONAL BENEFITS

### 401K Benefits

Once the Employee meets the minimum plan qualifications, the Employee will be enrolled in the Core Maione Services 401(k) Plan and Trust. Upon enrollment in the plan, the Company will contribute 3% of the Employee's compensation, irrespective of any deferral contributions made by the Employee. The plan is subject to additional terms and conditions and is subject to change at the sole discretion of the Company.

### Vacation Schedule

The Employee shall be entitled to a paid vacation of two (2) weeks, to be used non-consecutively and upon approval of the Company. Employee agrees that any vacation time not used during the current year will be forfeited.

### Paid Holidays Schedule

The Employee shall be entitled to holiday pay on all holidays observed by the Company. The Company currently observes the following Holidays: New Year's Day, Memorial Day, July 4th, Labor Day, Thanksgiving Day, Day After Thanksgiving, Christmas Day.

### Personal Time Off (PTO) Days

In addition to the paid vacation and paid holidays, the Employee shall be entitled to three (3) PTO days for sickness, injury or personal time, during which the Employee will receive full compensation. Employee agrees that any PTO days not used during the current year will be forfeited.

### Cell Phone

The employee will be provided with a Company-owned cell phone for use in conducting Company business. The Company will pay all company-related monthly usage fees.

Travel Expenses

The Employee may incur reasonable expenses for promoting the Company's business, including expenses for entertainment, travel, lodging, and similar items. The Company will reimburse the Employee for all authorized expenses upon the Employee's monthly presentation of an itemized account of such expenditures.

Auto Expenses

The Company will provide a monthly reimbursement to the Employee, at a rate of 42 cents per mile, for the use of his or her personal vehicle while on company business.

All business-related travel miles must be documented as reasonably required by the Company. Commuting mileage to and from the Company's principal place of business is excluded from reimbursement.

ADDITIONAL INFORMATION

For additional information and/or clarification of Company policies and procedures, the Employee is encouraged to reference the Core Management Services' Company Handbook.

## Commission Claim Form - Core Management Services

Date: _____ Time: _____

Employee: _____  Submitted to: _____

Customer (Company) Name  _____

Customer Organization  _____

Customer Contact  _____

Customer Location(s)  _____

Project – (Select One):

Assessments:
( ) SPA Assessment
( ) Benchmark Analysis – Onsite/Offsite

Site-Based– In-house/Outsourced
( ) Total Process Management
( ) Total Organizational Management
( ) Third Party Inspection Only

Corporate Supported
In-house Projects:
( ) Process Design
( ) Process Design and Training
( ) Total Process Management
( ) Total Organizational Management
( ) Quality Program - Paper/Legacy/Web
Outsourced Projects:
( ) Bid/Negotiation Process
( ) Quality Program- Paper/Legacy/Web
( ) Total Process Management

Other:
( ) Smartload™ Janitorial Workloading Software
( ) Services Not Listed (Please Specify) _____

Sales Activity Leading to Commission Claim: _____

_____

As of the date and time above, I am submitting a claim to receive a sales commission in the event that the Company makes a sale relating to the specific customer, organization, contact, location, and project as indicated above. I acknowledge that the Company's acceptance of this claim shall entitle me to a sales commission for this <u>customer, organization, contact, location, and project only,</u> provided that a sale is made, and only as defined in Exhibit "A" of my Employment Agreement. I acknowledge that it does not entitle me to any other commission for any subsequent sales to this customer, organization, contact, or location, now or in the future, nor does it entitle me to any commissions for any additional sales made to this customer at other sites. I further acknowledge that I will only receive a sales commission associated with this sale if I am employed by the Company, in good standing, as solely determined by the Company, at the time that the commission is scheduled to be paid.

Employee Signature: _____  Date: _____

Employee please do not write in shaded area – for Company use only

( ) Approval Granted  Date: _____  By: _____  Approval Expires: _____
( ) Approval Rejected  By: _____  Date: _____
Reason for Rejection:

8

# EXHIBIT "B"
## DUTIES AND RESPONSIBILITIES

| | |
|---|---|
| Position Title: | Operations and Business Development Manager |
| Reports to: | President/CEO |

Objective: Work closely with the President/CEO to manage account operations, secure/renew existing accounts, broaden account penetration, increase gross profit margins, and secure new business

Responsibilities:

Participate in the establishment, organization, and implementation of short- and long- range business development goals.

Exercise independent judgment and discretion with respect to matters of significance while managing day-to-day operations, or while selling on the telephone, on the web, at trade shows, or on site, with customers and/or potential customers.

Establish and expand relationships with key executives and decision makers within each customer or potential customer organization.

Participate in the preparation and presentation of sales and marketing material.

Help to identify opportunities to reduce direct costs associated with the performance of his or her duties.

Communicate regularly with executive-level management regarding the status operations and sales initiatives, and to obtain executive guidance and approval when required to advance initiatives.

Provide, in a timely fashion, all required expense-related or other job-related documentation as solely determined by the Company.

Perform miscellaneous job-related duties as assigned.

9

EXHIBIT "C"
CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

Agreement dated as of the 12th day of February, 2007, between CORE MANAGEMENT SERVICES, L. L. C. (the "Company"), a limited liability company organized and existing under the laws of the State of New York, with its principal office located at 111 Grant Avenue, Endicott, N.Y. 13760, and Ronald Todd (the "Employee"), residing at 8772 Eastbrook Circle, Chagrin Falls, Ohio 44023.

AGREEMENT

The Employee and the Company agree that the Company is engaged in the janitorial consulting and management industry and that through the performance of his or her duties, the Employee will have frequent contact with the customers and proprietary materials of the Company. The Employee and the Company further acknowledge that the Company has an interest in protecting itself against having its customers obtain these services from any source other than the Company.

In consideration of the covenants and obligations set forth in this agreement and other valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

I. CONFIDENTIALITY

A. Nondisclosure. Employee will not, during or after the term of this agreement, directly or indirectly, use, disseminate, or disclose to any person, firm, or other business entity for any purpose whatsoever, any information not generally known to the general public disclosed to Employee or known by Employee as a consequence of or through his association with the Company. It includes information regarding or relating to both the Company and its customers. It includes, but is not limited to, any information regarding products, processes, customers, services, suppliers, purchasing, merchandising, pricing, marketing, fees, computer data or other related matters.

B. Return of Written Materials. To protect the interests of the Company and its customers, Employee agrees that, during or after the termination of Employee's employment with the Company, whether voluntary or involuntary, all documents, records, notebooks, computer disks and similar repositories containing such information described in paragraph I(A) above, including copies thereof, whether prepared by Employee or others, are the property of the Company and shall be returned to the Company when the Employee ceases to be employed with the Company.

II. NONCOMPETITION

A. Employee Conduct with Regard to Customers. Without regard to geographic area, while an employee and for two (2) years after termination from the Company for any reason, Employee agrees that Employee will not, without the prior

written consent of the Company directly or indirectly, whether as a employee, officer, director, independent contractor, consultant, stockholder, partner or otherwise, engage in or assist others to engage in or have any interest in any business which solicits business from or performs services for any customer for which the Company has performed any services within the prior two (2) year period.

    B.    Solicitation of Employees. Employee agrees that while still an Employee and for two (2) years after termination for any reason, Employee will not induce or attempt to induce any person who is an employee of the Company to leave the employ of the Company and engage in any business which competes with the Company.

    C.    Maximum Restrictions of Time, Scope, and Geographic Area Intended. The parties agree and acknowledge that the time, scope and geographic area and other provisions of this agreement have been specifically negotiated by the parties, and Employee specifically hereby agrees that such time, scope and geographic areas, and other provisions are reasonable under these circumstances. Employee further agrees that if, despite the express agreement of the parties to this agreement, a court should hold any portion of this agreement unenforceable for any reason, the maximum restrictions of time, scope and geographic area reasonable under the circumstances, as determined by the court, will be substituted for the restrictions held unenforceable.

## III. BREACH OF AGREEMENT

    A.    Remedies. Employee agrees that the violation of any section of this Agreement at any time will produce severe damage and injury to the Company. In the event of the breach of, or threatened breach by Employee of this agreement, the Company and/or its Employees shall be entitled to seek injunctive relief, both preliminary and permanent, enjoining and restraining such breach or threatened breach. Such remedies shall be in addition to all other remedies available to the Company in law or in equity, including but not limited to the Company's right to recover from the Employee any and all damages that may be sustained as a result of Employee's breach.

    B.    Choice of Law. The validity, interpretation and performance of this agreement shall be controlled by and construed under the laws of New York.

    C.    Attorney Fees. If an attorney shall be retained to interpret or enforce the provisions of this agreement, the prevailing party shall be entitled to be reimbursed for all reasonable attorneys' fees incurred, without regard to whether a legal action was formally commenced, and including the fees necessitated by the appeal of any determination by either party.

This agreement is executed as of the date first written above.

_____  Date 2/12/07
Company

_____  Date 2/12/07
Employee